UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:16-cv-00437-TJC-PDB

**SWISHER INTERNATIONAL, INC.**, a Delaware corporation,

    Plaintiff,

v.

**ENCORE VAPOR INC.**, an Illinois corporation,

    Defendant.

_____

### **PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiff Swisher International, Inc. ("Swisher"), by and through its undersigned counsel, hereby moves the Court to enforce a settlement agreement reached between it and defendant Encore Vapor, Inc. ("Encore") as to all claims at issue in the above-captioned litigation. After Swisher accepted a straightforward and clear offer by Encore, and following two months spent memorializing the terms of such offer in a formal document (during which time the essential, material terms never varied), Encore clearly and unequivocally agreed to the terms of a written settlement agreement.  After Swisher executed that agreement and returned a copy to counsel for Encore (which has been represented by the same counsel throughout these proceedings), Encore then informed Swisher that it did not understand some unspecified term of the agreement and attempted to withdraw from the settlement.  Swisher respectfully requests that the Court enter an order enforcing the written settlement agreement reached by the parties and enter the Consent Judgment in favor of Swisher on all claims, as provided for in the parties' agreement. The further good cause warranting the relief requested herein is as follows:

# INTRODUCTION

Swisher has now expended two months' worth of time and resources in preparing settlement papers memorializing a settlement agreement, *the terms of which were offered by Encore to Swisher* when Encore's counsel approached Swisher's counsel with an offer of a consent judgment in Swisher's favor. Encore made this offer in August, which also included the term that each party would bear its own fees and costs in the litigation, and, within 24 hours, Swisher accepted the offer. Swisher further advised that it would draft settlement papers reflecting the essential terms along with other standard settlement language, including a mutual release. As soon as Swisher accepted the essential terms, and confirmed same, there was a meeting of the minds on all essential terms. Swisher then undertook the responsibility, at its cost, of memorializing the parties' agreement, including other customary settlement agreement terms. At no time in any of the numerous communications between counsel for the parties from August 22, 2016 through September 26, 2016, did Encore ever rescind or reject the essential terms of the settlement agreement. After reaching agreement on the final form of the Settlement Documents – including all of Encore's revisions to the non-essential terms of the settlement agreement and its revisions to the proposed Consent Judgment – Swisher executed the settlement agreement and delivered same to Encore's counsel. Now, more than 20 days after Swisher tendered an executed copy of the settlement agreement, Encore – for the first time – asserts that it "did not completely understand some terms" and does not wish to proceed with settlement. However, Encore's position at this late date – two months after *Encore* offered the essential terms of settlement – is without merit. As set forth below, Swisher has more than substantial and competent evidence showing the assent of the parties to all material terms – which are (1) entry of a consent judgment and (2) an agreement for each side to bear its own attorneys' fees and costs.

Accordingly, with an offer and acceptance on all essential terms, as well as an offer and acceptance of the written settlement agreement itself, there is a contract between the parties that this Court should enforce. To otherwise allow Encore to escape the terms of the agreement it offered and reached with Swisher would be contrary to the public interest in encouraging compromise and conserving judicial resources.

## FACTUAL BACKGROUND

1. On April 13, 2016, Swisher filed this action seeking a declaration that Swisher's use of "Encore Edition" on certain SWISHER SWEETS limited edition product does not infringe upon Encore's "Encore" mark for "electronic cigarettes" (the "Mark").

2. In response to Swisher's filing, on May 11, 2016, Encore appeared in the action and asserted counterclaims against Swisher for trademark infringement and unfair competition (the "Counterclaims").

3. After the filing of Swisher's Answer and Affirmative Defenses to the Counterclaims, the parties met and prepared a Case Management Report [ECF No. 9]. On July 5, 2016 and July 20, 2016, Encore propounded on Swisher its First Requests for Production (the "RFP") and First Set of Interrogatories, respectively.

4. On August 9, 2016, one day after receiving Swisher's responses to the RFP and less than three months after Encore sought affirmative relief from this Court in its Counterclaims, Encore's counsel Aaron Cohn, Esq., called Ryan Roman, Esq., counsel for Swisher, and tendered Encore's offer to settle the matter for (1) a consent judgment in Swisher's favor and (2) a walk away by both sides on attorneys' fees and costs for the litigation. *See* Declaration of Ryan Roman (hereinafter cited as "Roman Decl., ¶ ___) at paragraph 3.

5.      After relaying the offer to his client, on August 10, 2016, Mr. Roman advised Mr. Cohn via email communication that Swisher accepted Encore's offer of settlement. *See* Roman Decl., ¶ 4, Ex. A. Mr. Roman confirmed in the email that the "settlement includes a consent judgment in Swisher's favor as to the claims and counterclaims and an agreement that each party shall bear its own fees and costs." *Id*. Mr. Roman further advised counsel that he would draft a settlement agreement, "including mutual releases and other customary terms" and send for Encore's review and comment. *Id*.

6.      Encore's counsel responded within moments to say, "Thanks." *See* Roman Decl., Ex. B.

7.      On August 22, 2016, Mr. Roman sent Swisher's proposed settlement papers to Mr. Cohn, including a Settlement and Release Agreement (the "Settlement Agreement") and Proposed Consent Judgment (the "Consent Judgment") (collectively, the "Settlement Papers"). *See* Roman Decl., Ex. C.

8.      The draft Settlement Papers contained and effectuated the material terms of the agreement reached between the Parties – (1) entry of a consent judgment in Swisher's favor; and (2) an agreement for each side to bear its own attorneys' fees and costs in the litigation. *Id.*

9.      The draft Settlement Agreement also contained other routine and customary terms such as:

- a release by Encore of Swisher for any and all claims, damages, and obligations of any nature whatsoever, known or unknown;

- a non-disparagement provision wherein Encore agrees to not make any disparaging statements or representations about Swisher or its attorneys;

{39875298;1}                                              4

- an acknowledgment that the Settlement Agreement is in full settlement of all claims;

- an irrevocable covenant by Encore not to commence, maintain or prosecute any action or proceeding against Swisher in connection with or related to Swisher's use of the term "Encore Edition";

- a term providing that the Settlement Agreement constitutes the entire agreement and understanding of the Parties;

- an agreement that the Settlement Agreement shall be governed by, and construed in accordance with, Florida law; and

- an attorneys' fees provision providing for the prevailing party's recovery of costs and reasonable attorneys' fees in any suit, action or proceedings arising out of or relating to the Settlement Agreement.

*See id.*

10. Swisher also provided a draft, proposed Consent Judgment establishing the Court's entry of judgment in Swisher's favor and against Encore on the declaratory judgment claim and dismissing the Counterclaims with prejudice. *See id*.

11. In the August 22, 2016, communication transmitting the draft Settlement Papers, Mr. Roman asked Mr. Cohn if the parties could stipulate to an extension of time for Swisher to respond to the interrogatories previously propounded. *See* Roman Decl., ¶ 8. Mr. Cohn responded later that afternoon and confirmed that he agreed to the extension. *See id.* at Ex. D.

12. On August 31, 2016, before sending revisions or comment to the Settlement Papers, Mr. Cohn called Mr. Roman asking if Swisher would be interested in buying Encore's portfolio. *See* Roman Decl., ¶ 9. Swisher rejected this offer, which Mr. Cohn confirmed to Mr.

Roman by telephone was not tied to the Settlement Agreement and was not a condition to entering into the Settlement Agreement. *See* Roman Decl., ¶¶ 9-10.

13. On September 1, 2016, Mr. Cohn responded with revisions to the Settlement Agreement and Consent Judgment. *See* Roman Decl., Ex. E. The Settlement Agreement revisions **did not** strike out the material terms – consent judgment and the agreement for each side to bear its own attorneys' fees and costs. *See id*. Rather, Encore's edits of September 1, 2016, addressed the unilateral release, acknowledgement of settlement, and non-disparagement terms. *See id.*

14. On September 7, 2016, Mr. Roman sent to Mr. Cohn both clean and redline versions of the revised Settlement Papers. *See* Roman Decl., Ex. F. The revised Settlement Papers once again maintained the same material terms as proposed by Encore – a consent judgment and agreement for each side to bear its own costs and fees in the litigation. *See id*. In the September 7, 2016, versions of the Settlement Papers, Swisher incorporated some of Encore's revisions, made the release mutual, narrowed the scope of the provision permitting Swisher's use of "Encore Edition," and limited the acknowledgment of settlement provisions. *See id.*

15. Likewise, Swisher accepted Encore's revisions to the Consent Judgment, revising only the terms "cigarillo" to read "cigar" and "mark" to read "term." *See id*. The material terms – judgment entered in favor of Swisher and against Encore and that the parties were to bear their own attorneys' fees and costs – remained the same in this version of the Settlement Papers. *See id.*

16. On September 12, 2016, Mr. Cohn responded with copies of the Settlement Papers advising that Encore would not agree to a *judgment* giving Swisher the right to create its

own independent "Encore" or "Encore Edition" lines and that "these revisions (should) address that issue." *See* Roman Decl., Ex. G. The only change made by Encore to the Settlement Agreement was making the "No Outstanding or Known Future Claims" terms mutual. *See id*. The revisions to the Consent Judgment made clear that Swisher's use of the term "Encore Edition" was limited to products bearing the "SWISHER SWEETS" mark and that the judgment shall not be construed as granting Swisher rights to use "Encore" or "Encore Edition" alone without Swisher's own house trademarks. *See id*.

17. Encore's September 12, 2016 revisions to the Consent Judgment did not alter or remove the essential clause agreeing to the Court's entry of judgment in Swisher's favor and against Encore as to the declaratory relief claim and dismissing the Counterclaims with prejudice. *Id*.

18. In the September 12, 2016, communication, Encore again offered to sell to Swisher the Encore mark. Again, the discussion and offer for the sale and purchase of the mark was separate and apart from the discussions regarding the final form of the Settlement Papers. *See id.*

19. On September 14, 2016, Mr. Roman sent Mr. Cohn an email advising that Swisher accepted Encore's edits of September 12, 2016, and provided a copy of the Settlement Agreement executed by Swisher. *See* Roman Decl., Ex. H.  Mr. Roman again rejected Encore's offer to sell the Encore mark.

20. On September 21, 2016, Mr. Cohn emailed Mr. Roman and advised Encore had "one revision" to the agreement. *See* Roman Decl., Ex. I.  On September 23, 2016, Mr. Cohn sent an email to Mr. Roman with a redline of the Consent Judgment only.  *See* Roman Decl., Ex. J. Mr. Cohn's email advised that the "**attached redline fixes the hang-up for [Encore].**" *Id*.

(emphasis added). Mr. Cohn did not request any changes to the Settlement Agreement, which had been finalized and agreed to by the parties no later than September 14, 2016. *See id*.

21. On the following business day, Monday, September 26, 2016, Mr. Roman emailed Mr. Cohn advising Swisher had "[j]ust one small revision to the proposed language to clarify which marks" Encore's last revision addressed. *See* Roman Decl., Ex. K. Swisher's revision of September 26, 2016, which was only to the Consent Judgment, simply helped to clarify Encore's requested change and did not alter or amend any material terms. *See id*.

22. On September 28, 2016, Mr. Cohn responded and stated "[t]he revision looks fine to me[.]" *See* Roman Decl., Ex. L.

23. On October 3, 2016, Mr. Roman followed up with Mr. Cohn to touch base regarding Encore's execution of the Settlement Agreement. *See* Roman Decl., Ex. M. The email communication went without a response, and again on October 11, 2016, Mr. Roman sent another communication to Mr. Cohn asking for the return of an executed copy of the Settlement Agreement. *See* Roman Decl., Ex. N (email chain to Mr. Cohn requesting updates).

24. After another six days without a response, on October 17, 2016, Mr. Roman again sent an email to Mr. Cohn requesting an update. *See id*.

25. On October 18, 2016, more than 20 days *after* Mr. Cohn responded that the revision "looks fine," Mr. Cohn emailed Plaintiff's counsel to advise: "My client did not completely understand some of the terms of the proposed agreement and, upon further review, declined the latest settlement offer. He is not interested in proceeding with those discussions at this time." *See* Roman Decl., Ex. O.

26. Encore's purported position of "declin[ing] the latest settlement offer" is pretextual and wholly inconsistent with Encore's actions to date. At this juncture, more than two

months have passed since there was an offer and acceptance on the material terms – a consent judgment and each side to bear its own attorneys' fees and costs. Also, more than a month passed since Encore and Swisher agreed on the actual, written terms of the Settlement Agreement.

27.     The pretext of Encore's purported "declination" of the Settlement Agreement is apparent on its face given that Encore does not identify a single term it takes issue with and given the fact that the essential terms of the Settlement Agreement, which were put forth by Encore in the first instance, never changed throughout the settlement negotiations.

28.     Accordingly, Swisher asks this Court to enforce the Settlement Agreement reached between the parties – the material terms of which Encore offered and Swisher accepted – and enter the Consent Judgment as contemplated by the parties.

## LEGAL ARGUMENT

### I.      Legal Standard.

"Federal district courts have the inherent power to summarily enforce settlement agreements entered into by party litigants in a pending case." *BP Products N. Am., Inc. v. Oakridge at Winegard, Inc.,* 469 F. Supp. 2d 1128, 1132–33 (M.D. Fla.2007); *see also Devoux v. Wise*, No. 3:12-CV-540-J-34JBT, 2014 WL 1457520, at *4–5 (M.D. Fla. Apr. 15, 2014) (quoting same). "[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." *Kent v. Baker,* 815 F.2d 1395, 1400 (11th Cir. 1987).

"Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so." *Spiegel v. H. Allen Homes, Inc.,* 834 So. 2d 295, 297 (Fla. 4th DCA 2002). Settlement agreements are governed by the law of contracts, and Florida contract law applies here. *See Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*,

No. 3:01CV1353 J32TEM, 2003 WL 25608009, at *3 (M.D. Fla. Oct. 21, 2003) (Corrigan, J.) (citing *Spiegel,* 834 So. 2d at 297; *Schlosser v. Perez,* 832 So. 2d 179, 182 (Fla. 2d DCA 2002)).

Swisher need only show assent by Encore and Swisher to the essential terms to enforce the Settlement Agreement. *See Beharrie-Lue v. Felt Home Care, Inc.,* No. 09-61246-CV-COHN, 2010 WL 2985650, at *1 (S.D. Fla. July 28, 2010) *(*citing *Williams v. Ingram,* 605 So. 2d 890, 893 (Fla. 1st DCA 1992)); *see also Londono v. City of Gainesville,* 768 F.2d 1223, 1227 (11th Cir.1985) (court has a duty to decide whether the parties have reached a "meeting of the minds and made an enforceable contract" to settle the case). Courts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists. *Id*. Even an oral agreement is enforceable if the material terms are agreed upon. *See, e.g., Silva v. Silva*, 467 So. 2d 1065, 1065 (Fla. 3d DCA 1985) (affirming trial court's order enforcing settlement agreement where disputed but substantial evidence showed the parties orally agreed to terms of property settlement agreement).

"The fact that an agreement may provide that a further more specific agreement will be entered into later does not affect the enforceability of the original agreement." *Specialty Disease,* 2003 WL 25608009, at *4 (quoting *In re Sav-A-Stop Inc.*, 124 B.R. 356, 359 (Bankr. M.D. Fla. 1991)). Trial courts will enforce a settlement agreement when there is competent evidence that there was a meeting of the minds on essential terms. *Specialty Disease Mgmt. Servs.,* 2003 WL 25608009, at *4. Even when there is an agreement to agree, that agreement is enforceable if it is "sufficiently specific to be capable of implementation and all essential elements are set forth." *In re Sav-A-Stop Inc.,* 124 B.R. at 359; *cf. Avalon Carriage Serv., Inc. v. Gamsey*, No. 304-CV-1126-J-32MCR, 2007 WL 2695790, at *1 (M.D. Fla. Sept. 11, 2007) (finding no legally binding

settlement to enforce because, at best, the parties reached an unenforceable "agreement to agree") (Corrigan, J.).

Here, the parties reached a meeting of the minds on the essential terms, and, thus, the Court should summarily enforce the Settlement Agreement and enter the Consent Judgment.

### II.     Swisher Has Set Forth Substantial Evidence Showing There Was a Meeting of The Minds on All Essential Terms.

The parties reached an agreement on all essential terms – entry of the Consent Judgment and each side to bear its own attorneys' fees and costs in the litigation. In fact, it was Encore who first proposed these terms, which Swisher accepted. The parties did not leave open any essential terms, subject to future negotiation.

The evidence presented by Swisher shows there was a meeting of the minds on all essential terms.  First, it cannot be downplayed that it was Encore who tendered the settlement offer that Swisher now seeks to enforce. *See* Roman Decl., ¶ 3.  Encore proposed a resolution to all claims in the litigation by offering a consent judgment in Swisher's favor on all claims and an agreement for each side to bear its own attorneys' fees and costs. *Id*. Second, Swisher confirmed the essential terms in Mr. Roman's email communication dated August 10, 2016, to which Encore ***did not*** object or otherwise state the terms were inconsistent with its proposal. *See* Roman Decl., ¶¶ 5-6, Exs. A and B. Third, Encore engaged in various rounds of edits for approximately one month, but not a single edit suggested by Encore altered the essential terms. *See* Roman Decl., ¶¶ 7-18, Exs. C-L.  Encore made edits only to other customary terms such as the release, non-disparagement and settlement acknowledgment terms. *See* Roman Decl., Exs. E, G, I, J.  Encore's revisions to the Consent Judgment did not alter the essential terms. *See id*. Rather, Encore's revisions altered semantics and other non-essential terms. *See id*.

In addition to neither party altering a single essential term at any time, the passage of time also is telling in the parties' assent to the essential terms. Encore fully understood and intended that the matter was settled and resolved and suspended Swisher's deadline to respond to interrogatories in light of same. *See* Roman Decl., Ex. D (email exchange confirming suspension of deadline). Further, during the time of August 10, 2016 through October 17, 2016, Encore did not take any action in the litigation. Encore continued to work with Swisher to finalize form of the Settlement Agreement and Consent Judgment and at no point gave any indication that it wanted to rescind or otherwise amend its offer (which, in any event, had been already been accepted by Swisher). Likewise, Encore retained Swisher's executed Settlement Agreement for 30 days without any objection or rejection of the Settlement Agreement. *See* Roman Decl., ¶¶ 14-21, Ex. 14.

The fact that Encore itself offered the essential terms it seeks to now escape and that in the two months of communications it never altered or rejected the essential terms is sufficient evidence for this Court to summarily enforce the Settlement Agreement and enter the Consent Judgment.

### III. Swisher Is Entitled To Its Attorneys' Fees for Enforcing the Settlement Agreement.

At all times and all drafts, the Settlement Agreement provided as follows:

> **Attorneys' Fees.** In the event that any Party institutes any legal suit, action or proceeding against the other Party ***arising out of or relating to this [Settlement] Agreement, the prevailing party*** in the suit, action or proceeding ***shall be entitled to receive*** in addition to all other damages to which it may be entitled, the costs incurred by such party in conducting the suit, action or proceedings, including ***reasonable attorneys' fees and expenses and court costs***.

Roman Decl., Exs. C, E, F, G and H (emphasis added). If the Court enforces the written Settlement Agreement between the parties, which the parties agreed to in its final form, Swisher is entitled to recover its attorneys' fees and costs incurred in bringing this Motion. *See, e.g., Sure*


*Fill & Seal, Inc. v. GFF, Inc.*, No. 8:08-CV-882-T-17-TGW, 2011 WL 1296630, at *3 (M.D. Fla. Mar. 31, 2011) (granting attorneys' fees to prevailing party on motion to enforce when settlement agreement enforced provided for attorneys' fees). Consistent with Fed. R. Civ. P. 54 and Local Rule 4.18, Swisher will file a separate motion for attorneys' fees and costs upon the Court's entry of an Order enforcing the Settlement Agreement and entry of the Consent Judgment.

**WHEREFORE**, Plaintiff Swisher International, Inc., respectfully requests that this Court enforce the Settlement Agreement reached with Encore Vapor, Inc., enter the Consent Judgment attached hereto as **Exhibit A**, grant Plaintiff its attorneys' fees in having to bring this Motion, and grant any further and additional relief that this Court deems just and appropriate.

### LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that on October 18, 2016, Ryan Roman, Esq., attorney for Plaintiff, conferred via telephone with Aaron M. Cohn, Esq., counsel for Encore Vapor, Inc., and advised Swisher would file the instant motion. However, counsel for the parties were unable to reach a consensus, and Mr. Cohn advised that Defendant would oppose the relief sought herein.

DATED:  October 27, 2016

Respectfully submitted,

*/s/ Kimberly A. Lopez*
MICHAEL C. MARSH, ESQUIRE, *Trial Counsel*
Florida Bar No.:  0072796
michael.marsh@akerman.com
RYAN ROMAN, ESQUIRE
Florida Bar No. 025509
ryan.roman@akerman.com
**AKERMAN LLP**
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131

        Telephone:  305-374-5600
        Facsimile:  305-374-5095

        *and*

        KIMBERLY A. LOPEZ, ESQUIRE
        Florida Bar Number: 059215
        kimberly.lopez@akerman.com
        **AKERMAN LLP**
        420 South Orange Avenue
        Suite 1200
        Orlando, FL  32801
        Phone:  (407) 423-4000
        Fax:  (407) 843-6610
        *Attorneys for Plaintiff*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 27, 2016, a true and correct copy of the foregoing was filed using the court's CM/ECF system, which will provide electronic notification to all counsel of record.

        */s/Kimberly A. Lopez*
        Kimberly A. Lopez, Esq.