## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SWISHER INTERNATIONAL,
INC., a Delaware Corporation,

      Plaintiff,

v.                                 Case No. 3:16-cv-437-J-32PDB

ENCORE VAPOR, INC., an Illinois
corporation,

      Defendant.

_____

## <u>O R D E R</u>

When the lawyers for each party have agreed to a settlement on behalf of their respective clients, in what circumstances can one party avoid the settlement by claiming his lawyer did not act with its authority?

Plaintiff Swisher International, Inc. filed this action seeking a declaration of non-infringement under the Lanham Act and common law with respect to its "Encore Edition" cigarillo products. Defendant Encore Vapor, Inc. counterclaimed for trademark infringement and unfair competition. Before the Court is Swisher's Motion to Enforce Settlement Agreement (Doc. 12), Encore's Response in Opposition (Doc. 14), Swisher's Reply (Doc. 18), and Encore's Sur-Reply (Doc. 24). The Court held a telephone hearing on January 3, 2017, the record of which is incorporated herein. (Docs. 26, 28). Following the hearing, the

Court referred this case to the assigned United States Magistrate Judge to conduct a settlement conference (Doc. 27), which resulted in impasse. On October 31, 2017, the Court held an evidentiary hearing on the motion, the record of which is incorporated herein. (Docs. 36, 39).

## I.      BACKGROUND

On August 9, 2016, Aaron Cohn, counsel for Encore, contacted Ryan Roman, counsel for Swisher, with an offer to settle this case for a consent judgment in Swisher's favor and a "walk away" on attorney's fees and costs. (Doc. 13 ¶ 3). After relaying Encore's settlement offer to his client, Roman advised Cohn the next day that Swisher accepted the offer of settlement (Doc. 36-1), and the parties exchanged drafts of the consent judgment and settlement agreement several times over the next two months. From Swisher's perspective, despite several revisions, the essential, material elements of the settlement were never altered: (1) the consent judgment in Swisher's favor; and (2) the "walk away" on fees and costs.

By contrast, Encore contends that the terms of the settlement agreement and consent judgment were "unspecified and required further negotiation." (Doc. 14 at 1.) From Encore's perspective, the material terms were never agreed upon, and there was no binding agreement—which is why Encore says it never filed a notice of settlement with the Court. Encore further argues that it did not consider its "offer of settlement" to be anything more than an offer to enter into

settlement negotiations, and that its counsel, Cohn, did not have settlement authority. Encore also argues that because it never executed the consent judgment and settlement agreement, there was no binding settlement. Believing that there was both offer and acceptance of the material terms, and therefore an enforceable agreement, Swisher filed a motion to enforce the settlement. (Doc. 12).

## II.  LAW

"District courts have inherent power to enforce settlement agreements. Indeed, the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." <u>Malvaes v. Constellation Brands, Inc.</u>, No. 14-21303-CIV-COOKE/TORRES, 2016 WL 4007332, at *2 (S.D. Fla. June 23, 2016) (citations and quotation marks omitted). "In both the federal and state courts, settlements are highly favored and will be enforced whenever possible." <u>Id.</u> (citing <u>Murchison v. Grand Cypress Hotel Corp.</u>, 13 F.3d 1483, 1486 (11th Cir. 1994)).

"In general, the law of contracts governs the construction and enforcement of settlement agreements." <u>Hayes v. Nat'l Serv. Indus.</u>, 196 F.3d 1252, 1254 (11th Cir. 1999) (citation omitted). In the Eleventh Circuit, federal courts generally rely "on state law principles in determining whether to enforce

a settlement agreement."[1] Id. at 1253. Thus, the determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract principles using a preponderance of the evidence standard. Welch v. N. Am. Tank Line, Inc., No. 8:06CIV2340-T-17MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) (citing U.S. Fire Ins. v. Caulkins Indiantown Citrus Corp., 931 F.2d 744, 749 (11th Cir. 1991)). "[P]arties have broad discretion in fashioning the terms of a settlement agreement, and courts must enforce a settlement agreement so long as the parties agree on the essential terms and seriously understand and intend to be bound by the terms." U.S. Bank Nat'l Ass'n v. Benoit, 190 So. 3d 235, 237 (Fla. Dist. Ct. App. 2016) (alteration in original) (citations and quotation marks omitted). "The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." BP Prods. N. Am. v. Oakridge at Winegard, Inc., 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007) (citing Carroll v. Carroll, 532 So. 2d 1109 (Fla. Dist. Ct. App. 1988)).

"To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." Id. "The definition of 'essential term' varies widely according to the nature and

---

[1] This is true even though this case is premised on federal law. See Hayes, 196 F.3d at 1253 (applying Georgia law in determining whether to enforce settlement agreement in a Title VII action).

complexity of each transaction and is evaluated on a case-by-case basis." Lanza v. Damian Carpentry, 6 So. 3d 674, 676 (Fla. Dist. Ct. App. 2009). Uncertainty as to non-essential elements or that the parties agree that they will enter into a more specific agreement later does not preclude finding that the parties reached a settlement. Specialty Disease Mgmt. Servs., Inc. v. AIDS Healthcare Found., No. 3:01-cv-1353-J-32TEM, 2003 WL 25608009, at *3, *4 (M.D. Fla. Oct. 21, 2003). Instead, "[c]ourts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists." Beharrie-Lue v. Felt Home Care, Inc., No. 09-61246-CV, 2010 WL 2985650, at *1 (S.D. Fla. July 28, 2010). In doing so, the Court must determine whether there was a "meeting of the minds," and such a finding "must be supported by competent substantial evidence." Specialty Disease, 2003 WL 25608009, at *4.

The Eleventh Circuit also instructs courts to "refer to state law principles when reviewing the scope of an attorney's authority to enter into a settlement agreement." Hayes, 196 F.3d at 1254; see Saettele v. Maronda Homes, Inc. of Fla., 438 F. App'x 749, 750 (11th Cir. 2011) (affirming district court's enforcement of settlement agreement under Florida law); Vital Pharm., Inc. v. S.A.N. Nutrition Corp., No. 06-60646-CIV-COHN, 2007 WL 1655421, at *5 (S.D. Fla. June 6, 2007) ("State law governs the construction of a settlement agreement and the attorney's authority to enter into a settlement agreement on

behalf of his client."). Under Florida law, the party moving to enforce a settlement agreement must demonstrate that the other party's counsel had authority to enter into the settlement agreement. Murchison, 13 F.3d at 1485 (citations omitted); Weitzman v. Bergman, 555 So. 2d 448, 449-50 (Fla. Dist. Ct. App. 1990) ("it is the burden of the party seeking to compel the settlement . . . to show that the attorney had authority to settle the case"). Where the issue is whether an attorney had settlement authority, "[a] client's express authority given to his attorney to settle a cause of action must be clear and unequivocal." Spiegel v. H. Allen Holmes, Inc., 834 So. 2d 295, 297 (Fla. Dist. Ct. App. 2002). "[C]ourts have been very stringent in what they find to be a 'clear and unequivocal' grant of authority." Weitzman, 555 So. 2d at 449. "The mere employment of an attorney does not of itself give the attorney the implied or apparent authority to compromise his client's cause of action." Albert v. Hoffman Elec. Const. Co., 438 So. 2d 1015, 1017 (Fla. Dist. Ct. App. 1983). Even "[a]n attorney's belief that he or she has the authority to settle does not alone establish such authority." Sharick v. Se. Univ. of Health Scis., Inc., 891 So. 2d 562, 565 (Fla. Dist. Ct. App. 2004) (citing Weitzman, 555 So. 2d at 449).

## III.  ANALYSIS

### A.    The parties reached a settlement

Roman, counsel for Swisher, filed a Declaration in support of its motion that states, "On August 9, 2016, Encore's counsel Aaron Cohn, Esq., called me

and tendered Encore's offer to settle the matter for (1) a consent judgment in Swisher's favor and (2) a walk away by both sides on attorneys' fees and costs for the litigation." (Doc. 13 ¶ 3; <u>see also</u> Doc. 39 at 12:19-25). Swisher accepted the offer the next day. By email, Swisher's counsel stated:

> I have discussed with my client and <u>we accept your client's offer of settlement</u>. This is to confirm that the settlement includes a consent judgment in Swisher's favor as to the claims and counterclaims and an agreement that each party shall bear its own fees and costs. We will draw up a draft settlement agreement, including mutual releases and other customary terms, and send it to you for your review and comment.

(Doc. 36-1) (emphasis added). In response, Encore's counsel merely stated, "Thanks, Ryan."[2] (Doc. 36-2).

In his Affidavit and at the evidentiary hearing, counsel for Encore states that during the initial phone call to Swisher's counsel, he merely "offered a framework for settlement" and "understood that the terms of the consent judgment would be material to any settlement agreement and would need to be negotiated and agreed to by the parties if a settlement were to be reached." (Doc. 14-1 ¶ 2; <u>see also</u> Doc. 39 at 34:25-35:7). Cohn also states that "Swisher should have known that [Encore] would need to agree to any proposed written terms of settlement in order for that settlement to be finalized and enforceable against the parties." (Doc. 14-1 ¶ 4).

---

[2] Referring to Ryan Roman, counsel for Swisher.

Upon review of the evidence, as of August 10, 2016, there was not only a "meeting of the minds" as to the essential terms (the consent judgment in Swisher's favor and the "walk away" on fees and costs), but also an offer and written acceptance. Swisher's August 10, 2016 email unequivocally states that "we accept your client's offer of settlement." (Doc. 36-1). Upon receiving that email, Encore's counsel did not clarify that what Swisher perceived as an offer was not actually an offer of settlement, but rather a starting point for negotiations, or otherwise balk at the idea that the parties had reached an agreement. Instead, Encore's counsel merely said "thanks," and the parties thereafter acted in conformity with an understanding that they had indeed reached a settlement. (Doc. 36-2). They exchanged several drafts of both the consent judgement and settlement agreement and, on September 23, 2016, Cohn sent an email to Roman stating, "[t]he attached redline fixes the hang-up for my client." (Doc. 36-9). Roman did not respond to that email. (Id.). By all indications, the parties had not only reached an agreement as to the essential or material terms but, as of September 23, 2016, had reached an agreement on <u>all</u> terms.

Encore argues that Swisher, by stating in an email that "if for some reason we don't finalize a settlement, we will discuss a new deadline," manifested an understanding that it did not consider there to be a binding agreement, and Encore therefore "was entitled to rely on Swisher's

representation that there was no agreement until finalized to avoid having to put into every e-mail language to the effect that" the agreement was not binding until signed. (Doc. 14 at 11.) However, the absence of any such cautionary or limiting language in Cohn's communications to Roman regarding the agreement between Swisher and Encore is relevant to determining whether Swisher could view them as binding.[3] See, e.g., WrestleReunion, LLC v. Live Nation Television Holdings, Inc., No. 8:07-cv-2093-JDW-MAP, 2009 WL 2473686, at *1 (M.D. Fla. Aug. 11, 2009) (noting, in factual discussion, that "the Outline of Terms lacked any provision stating that the parties did not intend to be bound prior to the execution of a long form agreement" and ultimately determining there was issue of fact regarding whether parties believed outline was binding). Therefore, in addition to Encore's failure to challenge Swisher's characterization of Encore's email communication as an "offer" that Swisher "accepted," it is a relevant consideration that Cohn's emails do not include any limiting language and instead bolsters the idea that the parties had agreed on all material terms.

_____

[3] In fact, the evidence shows that when Cohn did not intend to make a binding offer, he specified as much in writing. When his client asked him to convey an offer from DNA Distributors to sell its brand to Swisher, Cohn wrote to Roman that "this should not be deemed a binding offer." (Doc. 36-6). That Cohn did not include this or similar language in any other context in his communications with Swisher supports the Court's conclusion that Encore's offer of settlement on August 9, 2016 was meant to be binding.

Nor does the fact that the parties continued to negotiate non-essential or non-material terms, such as a non-disparagement clause, of the settlement preclude the Court from finding that the parties reached a binding settlement. See, e.g., Miles v. Nw. Mut. Life Ins. Co., 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) ("[T]he settlement agreement contained all the essential terms of the agreement. That the confidentiality and non-disparagement terms of the agreement were not fully expounded is immaterial. Rather than being essential, these provisions go towards how the agreement will be implemented going forward."). In Specialty Disease, this Court addressed a motion to enforce a settlement in which one party argued that they had orally reached a settlement agreement, while the other party disputed that any agreement existed. 2003 WL 25608009, at *1-3. No formal, written agreement was executed. Nevertheless, the Court found that there had been offer and acceptance, the material terms were agreed upon, and therefore an enforceable contract existed. Additionally, the Court considered that the attorneys' conduct was consistent with an understanding by both parties that a settlement had been reached, and granted the motion to enforce. Id. at *4. ("Mr. Weinstein's actions following his telephone call with Mr. Goldstein on June 12, 2003—including instructing his counsel to cancel the trial and telling witnesses that the trial was off—are consistent with the notion that Mr. Weinstein believed that he and Mr. Goldstein had settled the case."). In doing so, the Court noted that just because

one party was later willing to agree to additional terms that the other party sought to include in the written agreement was not evidence that the parties had not reached a binding settlement agreement; instead, it showed only that one party "was willing to be flexible in order to have a written agreement that both sides would sign." Id.

The same holds true here: the mere fact that the parties continued to exchange drafts and negotiate non-essential terms does not mean there was not a binding, enforceable settlement. Instead, as of September 28, 2016 at the latest, the parties had agreed on the form of the consent judgment and settlement agreement. (Doc. 36-11). This is not a case where one party made an offer, and the other party appeared to accept the offer but later denied doing so. Rather, there was an offer and acceptance as of August 10, 2016, and later a meeting of the minds as to the terms of the settlement agreement, which were sufficiently specific and mutually agreed-upon as to each essential element. (Docs. 36-1, 36-2).

Accordingly, Swisher has met its burden to prove by a preponderance of the evidence that Encore assented to the terms of the settlement, particularly in this instance, where Encore itself established the terms of the agreement by making the initial offer.

**B.    Encore's failure to sign the settlement documents is not determinative**

Encore also argues that its failure to sign the settlement agreement is fatal to Swisher's contention that there was a binding settlement, and cites Middle District of Florida Local Rule 4.15, <u>Scott v. Tischler</u>, 882 So. 2d 461 (Fla. Dist. Ct. App. 2004), and <u>Albert v. Hoffman Elec. Constr. Co.</u>, 438 So. 2d 1015 (Fla. Dist. Ct. App. 1983), in support. However, neither the Local Rules nor these cases affords Encore relief.

First, Encore contends that enforcing the settlement agreement would violate Local Rule 4.15, which is entitled "Written Stipulations Required" and states:

> No stipulation or agreement between any parties or their attorneys, the existence of which is not conceded, in relation to any aspect of any pending case, will be considered by the Court unless the same is made before the Court and noted in the record or is reduced to writing and subscribed by the party or attorney against whom it is asserted.

M.D. Fla. Local Rule 4.15. Encore cites no authority supporting the contention that this rule applies to settlement agreements, nor can it, because it does not. The local rule applies to situations such as evidentiary stipulations before trial, not settlement agreements. Thus, Encore's argument is unavailing.

Similarly, the cases Encore cites are distinguishable and do not support its position. In <u>Scott</u>, the settlement agreement reached at mediation included

language that the "settlement was 'contingent upon execution of this agreement'" within five days. 882 So. 2d at 462. There, two parties to the settlement refused to sign the agreement—indeed, the court noted that "[t]he signatures were required by the agreement itself." <u>Id.</u> Unlike <u>Scott</u>, the provisions Encore points to as "requiring signature" to become binding merely state that "by signing this agreement" the parties are giving up their rights to seek further relief, that no modifications to the agreement are binding "unless in writing and signed by each of the parties," and "by signing below," the parties represent that the person signing has the authority to bind the party. (<u>See</u> Doc. 14 at 7.) These provisions are distinguishable from the provisions in <u>Scott</u> that identified the settlement as <u>contingent</u> upon execution of the written agreement.

<u>Albert</u>, too, is different. In <u>Albert</u>, the court found that exchanges between counsel were not binding because the defendant had not signed the settlement agreement. 438 So. 2d at 1017. However, in that case, unlike here, the husband-defendant was present when counsel announced that they had reached a settlement, but not his wife, who was also a party defendant. During the on-the-record exchange with the court, counsel stated that they had reached an oral settlement agreement and dictated the stipulation into the record, but expressly noted that "a caveat will be if [the defendant's wife] does not execute this settlement, then there is no settlement, as she is a party defendant." <u>Id.</u> at

1016. The court agreed: "Absolutely. One of the preconditions and prerequisites is that [the wife] join in the settlement and be bound by all its terms and conditions . . . . " Id. The wife argued that her counsel had no authority to enter into the agreement, and the appeals court agreed that the exchange on the record demonstrated that she could not be bound.

The provisions in <u>Scott</u> and <u>Albert</u> are distinguishable from those featured in Encore's and Swisher's documents, which do not state that the settlement agreement will only become binding upon the execution of both parties. <u>See</u> <u>Vital Pharms.</u>, 2007 WL 1655421, at *6 (enforcing unexecuted settlement agreement despite arguments that it had to be signed by both parties to be binding and effective). Moreover, at the evidentiary hearing, Cohn conceded that the fact that Encore did not sign the agreement does not mean as a matter of law that there cannot be a binding agreement. (Doc. 39 at 37:22-23). Cohn averred, however, that his client still had to give him the authority to bind Encore for the Court to enforce any agreement. (<u>Id.</u> at 37:24-25). The Court turns to this issue next.

### C.    Encore's counsel's settlement authority

The heart of this dispute involves this legal question: how can an attorney engaged in settlement negotiations know whether opposing counsel has the authority to enter a binding settlement agreement on his client's behalf? Under Florida law, the party seeking to enforce a settlement agreement bears the

burden of showing that an attorney for the opposing party had "clear and unequivocal" authority to settle on the client's behalf. See supra pp. 5-6. This Court has already expressed a healthy degree of skepticism regarding whether this is the most logical approach. (Doc. 31 at 3 n.1).

The Court takes a moment to expound upon its concerns. Under Florida law, the party moving to enforce a settlement bears the burden of showing that the parties reached agreement as to essential terms. This is as it should be. But, if the moving party meets this burden, and the only remaining question is whether opposing counsel who negotiated the settlement had the authority of his client to settle the case, it makes more sense to presume that the settlement was authorized by the attorney's client and place the burden of proving otherwise on the party disputing the attorney's authority. Such is the law in several other jurisdictions. See, e.g., In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996) ("Nevertheless, because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so. In accordance with that presumption, any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority.") (citing Greater Kan. City Laborers Pension Fund v. Paramount Indus., 829 F.2d 644, 646 (8th Cir. 1987) (holding that

burden of proof is on party challenging attorney-of-record's authority to settle case); <u>Edwards v. Born, Inc.</u>, 792 F.2d 387, 390 (3d Cir. 1986) (same); <u>Mid-South Towing v. Har-Win, Inc.</u>, 733 F.2d 386, 392 (5th Cir. 1984) (same); <u>Thomas v. Colo. Tr. Deed Funds</u>, 366 F.2d 136, 139 (10th Cir. 1966) (same)); <u>see also Michaud v. Michaud</u>, 932 F.2d 77, 80 (1st Cir. 1991) ("While there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client, rebuttal of the presumption renders any purported settlement ineffective.").

This approach correctly places the burden of showing an attorney lacked settlement authority on the party most likely to possess the affirmative evidence required to demonstrate as much. In addition, when the burden rests with the party challenging the attorney's authority, the strain on attorney-client privilege decreases because it is likely to be the client's choice to break privilege to demonstrate that its attorney exceeded the scope of his authority. In Florida, as the instant case demonstrates, the party moving to enforce the settlement agreement is placed in the difficult position of proving that opposing counsel had settlement authority. This often necessitates invading the other side's attorney-client privilege, including, as here, conducting an evidentiary hearing where both the attorney and his client must testify about their otherwise protected communications. The law should not require this; instead, it should presume the long-standing norm that an attorney who settles a case

on his client's behalf speaks for the client absent proof adduced by the client that his attorney lacked the client's authority to do so. This promotes customary settlement practice which allows attorneys to rely on each other that they both speak with their client's authority when settling a case.[4] This, in turn, furthers the law's interest in encouraging settlement of disputes. However, notwithstanding the Court's doubts about the wisdom of the current Florida law on this subject, the Court must follow it.

The instant dispute closely resembles two cases from this Circuit applying Florida law regarding an attorney's settlement authority. In Murchison v. Grand Cypress Hotel Corp., the client knew that his attorney was conducting settlement negotiations and took an active role directing his attorney during the negotiations, but later claimed that his attorney lacked authority to settle the case. 13 F.3d at 1485. In finding that the moving party had met its burden of showing clear and unequivocal authority, the Eleventh Circuit underscored the client's awareness of and participation in the settlement negotiations. Id.

Similarly, in Vital Pharmaceuticals, Inc. v. S.A.N. Nutrition Corp., the court found that the client knew its attorney was conducting settlement negotiations and admitted that the attorney had the authority to participate in

---

[4] If, in the course of settlement discussions, the attorney's authority is contingent on further approval from his client, the attorney can just say so.

17

the negotiations. 2007 WL 1655421, at *5. Although at the evidentiary hearing the client maintained the attorney lacked authority to enter into a binding settlement agreement, the court found that "this is a distinction without difference, because the authority to negotiate terms of a settlement agreement necessarily includes authority to enter into a binding agreement." Id. The court concluded it was "simply nonsensical" for the client to argue that the attorney had authority to make certain offers but not to enter into a binding agreement, "when the making of an offer has the legal consequence of binding the offeror if that offer is accepted." Id. As in Murchison, the client's extensive involvement in dictating the terms during negotiations convinced the court that the client had authorized the attorney to negotiate and make offers regarding all the essential terms of the agreement. Id.

Here, the Court faces similar circumstances as in Murchison and Vital Pharmaceuticals. The evidence shows that Cohn had authority from Encore's corporate representative, Joshua Jenkins, to settle the case. To find otherwise would be "simply nonsensical," given Jenkins's admission at the evidentiary hearing that he gave Cohn authority to enter settlement negotiations, (Doc. 39 at 43:10-12), and that it was Encore itself, through Cohn, that first made the offer to settle on specific terms, an offer which Swisher promptly accepted. After Swisher accepted Encore's settlement offer, Jenkins was closely involved in negotiating the final details of the settlement. For instance, Cohn informed

Roman that his client (Jenkins) would not agree to a judgment that gave Swisher certain rights. (Doc. 36-6; Doc. 39 at 20:15-22). In the same email, Cohn conveyed at least two additional offers (distinct from the ongoing negotiations) from Jenkins to Swisher: Jenkins's offer for Swisher to buy the Encore mark outright, as well as an offer from another company, DNA Distributors, to sell its brand to Swisher. (Doc. 36-6; Doc. 39 at 20:23-21:19). On September 23, 2016, Cohn emailed Roman, saying that "the attached redline [of the Consent Judgment] fixes the hang-up for my client," showing that he and Jenkins had discussed the settlement documents, and Jenkins was satisfied. (Doc. 36-9). Jenkins confirmed that during negotiations, he had the opportunity to ask Cohn any questions about the settlement papers, and Cohn never refused to answer his questions. (Doc. 39 at 44:18-24). When Cohn did not know an answer immediately, he would find out the answer and get back to Jenkins. (Id. at 44:25-45:8).

To the extent Cohn and Jenkins testified at the hearing that Cohn did not have settlement authority, the Court finds that their testimony lacks credibility.[5] See Welch, 2008 WL 3982394, at *2 (granting defendants' motion

---

[5] Jenkins's testimony reveals that, rather than not understanding the terms of the agreement, his decision to back out of the agreement very likely stemmed from his discovery of Swisher's involvement in the electronic cigarette vapor category, which he viewed as "a huge red flag for [Encore]." (Doc. 39 at 47:15-25).

to enforce settlement agreement after finding the plaintiff's testimony lacked "any credibility"). At the hearing, Cohn testified that he "discussed all of the proposed revisions at some point with [Jenkins]". (Doc. 39 at 26:10-11). Therefore, the "only reasonable and logical inference," based on Jenkins's admitted authorization to Cohn to make settlement offers and his regular communication with Cohn during the negotiations, is that Cohn had the authority to settle the case on the terms that Encore itself proposed. <u>Vital Pharms.</u>, 2007 WL 1655421, at *5. Swisher has proven by a preponderance of the evidence that Cohn had the "clear and unequivocal" authority from Encore to settle the case on the terms Encore proposed.

Accordingly, it is hereby

**ORDERED:**

1.    Plaintiff's Motion to Enforce Settlement Agreement (Doc. 12) is **GRANTED** to the extent the Court will enter the agreed-upon Consent Judgment (Doc. 12-1).

2.    Swisher may well accept that the entry of the Consent Judgment resolves the case. However, to the extent Swisher seeks any other relief, by **February 28, 2018**, it shall file a supplemental brief of no more than ten pages stating the relief it seeks and the basis for doing so. Encore may file a response brief of no more than ten pages by **March 21, 2018**.

3. Following entry of the Consent Judgment, the Clerk should close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of February, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record